PD-0622-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/21/2015 3:07:23 PM
Accepted 7/22/2015 4:55:30 PM
ABEL ACOSTA
CLERK

No. PD-0622-15

## IN THE COURT OF CRIMINAL APPEALS

### THADMON LEWIS

Appellant,

v.

### THE STATE OF TEXAS

## PETITION FOR DISCRETIONARY REVIEW

**Clement Dunn**
**State Bar No. 06249300**
**140 East Tyler, Suite 240**
**Longview, Texas 75601**
**Telephone: 903-753-7071**
**Fax: 903-753-8783**

FILED IN
COURT OF CRIMINAL APPEALS

July 22, 2015

ABEL ACOSTA, CLERK

**ORAL ARGUMENT WAIVED**

# IDENTITY OF PARTIES AND COUNSEL

Appellant certifies that the following is a complete list of all parties to the trial court's judgment and the names and addresses of their trial and appellate counsel.

1.  Appellant:    Thadmon Lewis

2.  Appellant's Trial Counsel:    Clement Dunn
    Attorney at Law
    140 E. Tyler Street, Suite 240
    Longview, TX 75601
    TSB No. 06249300

3.  Appellant's Counsel on Appeal:    Clement Dunn
    Attorney at Law
    140 E. Tyler Street, Suite 240
    Longview, TX 75601
    TSB No. 06249300

4.  Attorney for the State:    Zan Brown
    Assistant District Attorney, Gregg County
    101 East Methvin St., Suite 333
    Longview, Texas 75601
    TSB No. 03205900

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................... i

TABLE OF CONTENTS ................................................................ ii

INDEX OF AUTHORITIES ............................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ................................................ 1

STATEMENT OF THE CASE ............................................................ 1

STATEMENT OF PROCEDURAL HISTORY .................................................. 2

GROUND FOR REVIEW ................................................................ 2

ARGUMENT ......................................................................... 2

CONCLUSION ....................................................................... 5

CERTIFICATE OF SERVICE ........................................................... 5

CERTIFICATE OF SERVICE ........................................................... 5

CERTIFICATE OF WORD COUNT ........................................................ 5

EXHIBIT A (COURT OF APPEALS' OPINION) ............................................ 6

# INDEX OF AUTHORITIES

## Constitutional Provisions

Article 37.07, Section 3(a)(1), V.A.C.C.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

NO. PD-0622-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

THADMON LEWIS                                              Appellant

V.

THE STATE OF TEXAS                                         Appellee

\* \* \* \* \*

**PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes Now the Appellant, by and through his attorney, Clement Dunn and respectfully

urges this Court to grant discretionary review of the above named cause.

## STATEMENT REGARDING ORAL ARGUMENT

Believing that the record and the briefs will fully encompass the issues presented, the

Appellant respectfully waives oral argument.

## STATEMENT OF THE CASE

Offense:        Credit/Debit Card Abuse


Verdict:        Guilty; Fifteen (15) months confinement - Texas Department of Criminal Justice

                - State Jail Division


Date of Verdict:        April 2, 2014

Trial Court:    124th District Court, Gregg County, Texas.

        This case involves a prosecution for Credit Card Abuse, a State Jail Felony, in Cause No.

42,729-B, in the 124th District Court of Gregg County, Texas. C.R., at 4. The Appellant entered

a plea of "guilty" to the District Court, without a plea agreement, on March 27, 2014. R.R., at 5-11. After receiving evidence and considering the presentence report, the District Court assessed the Appellant's punishment at fifteen months' confinement in a State Jail. In a Memorandum Opinion dated March 24, 2015, the Texarkana Court of Appeals affirmed the District Court.

## STATEMENT OF PROCEDURAL HISTORY

March 24, 2015:     Opinion of the Sixth Court of Appeals, Texarkana
                    (Affirming the District Court)

No motion for rehearing was filed.

## GROUND FOR REVIEW

The Court of Appeals has misinterpreted and misconstrued the standard for consideration of prior bad acts of the Defendant at the punishment phase.

## ARGUMENT

The standard for the admission of evidence of an "extraneous crime" or a "bad act" committed by a defendant at the punishment phase of a trial derives from Article 37.07, Section 3(a)(1), V.A.C.C.P., which states, in pertinent part:

> Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty.
> (a)(1) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, not withstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Despite the unmistakable language of this statute, mandating that the "extraneous

crime or bad act,"committed by the defendant or for which he could be held criminally responsible must be shown <u>beyond a reasonable doubt</u> to have been in fact committed by the defendant or that he could be held criminally responsible, the Court of Appeals in the instant case sets out a very different standard:

> Therefore, in this case, we determine only whether the evidence showed that (the Appellant) committed the prior bad acts.

Opinion, at 2.

The instant case involved the alleged unauthorized use of a credit card that belonged to a company that had employed the Appellant. While the evidence showed, and the Appellant admitted, that the Appellant had used the card without authorization, he consistently maintained "that he had only done it a few times." (See R.R. 2, at Exhibit 2.) Evidence that the card had been used numerous other times contained no connection between the Appellant and these multiple uses. In contrast, the evidence showed that at least two people other than Appellant had used the card. <u>Id</u>.

Against this background, a "seven-page printout of unauthorized fuel transactions," the Court of Appeals does not require that each and every transaction to be considered against the Appellant be proven beyond a reasonable doubt. The indictment contained but a single count. C.R., at 4. Article 37.07, <u>supra</u>, requires that any additional transactions be proven beyond a reasonable doubt before being considered at the punishment phase.

Yet, the District Court opined as follows:

> Now I need to make a determination of what is the appropriate sentence in this particular case.
> Based on your criminal history, you could have been enhanced to a second degree felony. The State chose not to do that. So that leaves the range of punishment between 180 days and two years in a state jail, instead of two to twenty years and probation from two to five years.
> While your felonies are old, you do -- in the last few years, have had some issues with the criminal justice system. That is a factor I have to consider. You seem to have had a good work history.
> What this case really comes down to is what's the full story? We have heard that you have taken responsibility from the beginning, and you did

admit to some of this to the police department. I had questions about the entire amount of restitution, what it should be and what it shouldn't be. Those are questions that could have been answered, but I can't speculate on what you would or wouldn't have said or that you -- you didn't take the stand, so I'm not going to consider that, but it does leave questions for the Court that I have to use my reason and common sense to answer. I've looked at the -- I've looked at the schedule [of fuel charges] attached to the police report. And what I see is that I see numerous instances that on one date the credit card is used maybe two or three times within a 10-minute period at the same gas station. I'm going to have to assume it was either you or the other individual involved. This just didn't start happening in September of 2012. This started happening shortly after you were terminated from them.

Your version in the PSI seems to be evasive at best. It's not taking responsibility; it's, "Well, at the time they were having layoffs, the job wasn't going well and I abused my credit card a few times." It wasn't your credit card and you just didn't abuse it a few times; it wasn't two or three times. We have you on tape on three or -- doing it three times, but looking at this, using my reason and common sense, it looks like it was a lot. I can't justify a probated case in this instance. I'm going to sentence you to 15 months' confinement in a state jail.

When the District Court states, "I'm going to have to assume it was either you or the other individual involved," (emphasis supplied) the consideration of extraneous offenses has clearly gone beyond what Article 37.07 permits. From a plea of guilty to a single count of Credit Card Abuse, the Appellant has been "assumed" to have committed many, many other acts.[1]

The Court of Appeals has thus misconstrued the applicable standard of Article 37.07 in affirming the District Court in its "assumption" that the Appellant had committed numerous extraneous offenses involving the use of the credit card. The record does not contain any evidence showing the Appellant committed more than three offenses with this card. (See remarks of the District Court, set forth above: "We have you on tape on three or–doing it three times, but looking at this, using my reason and common sense, it looks like it was a lot.") While a fact-finder may employ "reason and common sense," the record must demonstrate a factual basis from which the application of "reason and common sense" could

---

[1]The Court of Appeals notes in its Opinion, at 2,5, that the Appellant did not object to the admission of this evidence. But there is nothing about this "evidence" that implicates the Appellant. Instead, this "evidence" consists of seven pages of credit card transactions for fuel without any direct indication of the user. This assumption on the part of the Trial Court occurred only at the end of hearing.

lead to the conclusion a defendant did indeed commit, or could be held legally responsible for, the commission of any given extraneous act-beyond a reasonable doubt.

## CONCLUSION

The Petitioner therefore respectfully requests that this cause be remanded to the Court of Appeals for a new hearing on punishment.

Respectfully submitted,

___//ss//___Clement Dunn_____
State Bar No. 06249300
140 East Tyler, Suite 240
Longview, Texas 75601
Telephone: 903-753-7071
Fax: 903-753-8783

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Petition for Discretionary Review was delivered to the Gregg County District Attorney's Office, Gregg, Texas on this 21ˢᵗ day of July 2015.

___//ss//___Clement Dunn_____

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Petition for Discretionary Review was mailed to the State's Prosecuting Attorney, P. O. Box 13046, Austin, Texas, 78711-3046 on this 21ˢᵗ day of July, 2015.

___//ss//___Clement Dunn_____

## CERTIFICATE OF WORD COUNT

I hereby certify that a total of 1756 words are included in this PDR.

___//ss//___Clement Dunn_____

# EXHIBIT A



# Court of Appeals
# Sixth Appellate District of Texas

## J U D G M E N T

Thadmon Lewis, Appellant

No. 06-14-00111-CR    v.

The State of Texas, Appellee

Appeal from the 124th District Court of Gregg County, Texas (Tr. Ct. No. 42729-B). Opinion delivered by Justice Burgess, Chief Justice Morriss and Justice Moseley participating.

As stated in the Court's opinion of this date, we find no error in the judgment of the court below. We affirm the judgment of the trial court.

We further order that the appellant, Thadmon Lewis, pay all costs of this appeal.

RENDERED MARCH 24, 2015
BY ORDER OF THE COURT
JOSH R. MORRISS, III
CHIEF JUSTICE

ATTEST:
Debra K. Autrey, Clerk



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00111-CR

_____

THADMON LEWIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 42729-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Hoping to receive community supervision, Thadmon Lewis placed himself at the mercy of the trial court by entering an open plea of guilty to one count of credit card or debit card abuse, a state jail felony. The trial court sentenced Lewis to fifteen months' confinement in state jail after reviewing (1) a police report indicating that Lewis had committed other acts of credit card or debit card abuse, and (2) a presentence investigation ("PSI") report revealing that Lewis had a previous criminal history. In a single point of error, Lewis argues that the trial court erred in considering extraneous offenses in assessing punishment because they were not included as enhancement allegations in the State's indictment or proven beyond a reasonable doubt. We find that Lewis' sentence was not enhanced and that the evidence demonstrated that Lewis committed the prior bad acts referenced by the trial court during sentencing. Accordingly, we affirm the trial court's judgment.

## I. Standard of Review

"'[T]he question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed.'" *Thompson v. State*, 425 S.W.3d 480, 491 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (quoting *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)); *see also Ellison v. State*, 201 S.W.3d 714, 718 (Tex. Crim. App. 2006). In making its punishment assessment, Lewis argues that the trial court erred in considering whether he committed other acts of credit card or debit card abuse because these other offenses were not proven beyond a reasonable doubt. In support of his argument, Lewis cites to Section 3(a) of Article 37.07 of the Texas Code of Criminal Procedure, which reads,

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, . . . the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2014). Article 37.07 discusses admissibility of extraneous offenses and bad acts during punishment. Because Lewis did not object to the admissibility of evidence introduced during the punishment phase of his trial, Lewis does not argue that the trial court abused its discretion in admitting evidence that he had committed other instances of credit card or debit card abuse.

Instead, Lewis challenges the court's factual finding for legal sufficiency. We find that Lewis' point of error urges this Court to invade the province of the fact-finder at punishment. "Whereas the guilt-innocence stage requires the [fact-finder] to find the defendant guilty beyond a reasonable doubt of each element of the offense, the punishment phase requires" only that the fact-finder "find that [] prior acts are attributable to the defendant beyond a reasonable doubt." *Haley*, 173 S.W.3d at 515. Thus, "'[w]e do not review the sufficiency of the evidence of an extraneous offense to support the [fact-finder's] assessment of punishment.'" *Thompson*, 425 S.W.3d at 491 (quoting *Thompson v. State*, 4 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd)); *see Malpica v. State*, 108 S.W.3d 374, 378 (Tex. App.—Tyler 2003, pet. ref'd); *see also Wilson v. State*, 15 S.W.3d 544, 549 (Tex. App.—Dallas 1999, pet. ref'd).

As our sister court stated in *Thompson,*

> Once the admissibility of an extraneous offense or bad act has been established, the jury or judge may rely upon the evidence in assessing punishment as long as the jury or judge concludes beyond a reasonable doubt that the defendant was involved in the act, and the sentence may not be challenged on the basis that the evidence did not rise to the level to establish an independent statutory crime.

*Thompson,* 425 S.W.3d at 491–92; *see Haley,* 173 S.W.3d at 515. Therefore, in this case, we determine only whether the evidence showed that Lewis committed the prior bad acts.

## II. The Evidence Established that Lewis Committed the Prior Bad Acts

### A. The Evidence at Sentencing

The events leading up to Lewis' arrest were explained in Detective Melanie Stephens' police report, which was admitted into evidence. Stephens began investigating the case when Paul Hane, a district manager for Archer Tubular (formerly Allis Chalmers Energy, Inc.), reported that someone was using the company's MK Voyager Fuel credit card to make unauthorized transactions. Hane explained that Archer Tubular stores one fuel card in each work truck so that its drivers can purchase fuel while they are on the job. In order to monitor the charges made by individual drivers, each driver is assigned a unique personal identification number (PIN) that must be used to authorize charges to the fuel card. Work trucks that are no longer in use are kept inside a gated and locked area.

According to Stephens' report, Hane was first alerted that something was wrong when a PIN, which was assigned to an employee who was in west Texas on company business, was used to make twenty-three unauthorized transactions on the company's fuel card from September 11 through September 20, 2012, in Gregg County, Texas. Hane discovered that the fuel card was

4

taken from one of the disabled trucks that had been used by both Lewis and Juan Carlos Bustamante before Archer Tubular terminated their employment in April 2012. Stephens' investigation confirmed Lewis as a suspect.

Stephens discovered witnesses and surveillance video proving that Lewis was employing the fuel card in a relatively simple scam. Using the fuel card, Lewis purchased diesel fuel for people who agreed to pay him half of the actual cost of the diesel fuel in cash. Witness Eddie Hewitt told Stephens that he had met Lewis at the gas station with his dump truck four or five times to engage in the illegal transaction. Lewis was listed in Hewitt's cell phone as "Lewis-Diesel Fuel." According to Hewitt, others also lined up with their trucks to fill their tanks with Lewis. Hewitt told Stephens that both his employee, Brandon Thomas, and his neighbor, Travis Dudley, Jr., were using Lewis' fuel "service."

Stephens contacted Thomas and Dudley, who both informed her that they unknowingly participated in Lewis' scam to fill their dump trucks with diesel fuel for half the market price. According to Stephens' report, Dudley said that Lewis was "filling up everybody" using a fuel card that Lewis claimed "was from a[n] oilfield company that he was working for." The report also indicated that Thomas met Lewis to get diesel fuel "a couple of times."

Armed with this information, Stephens conducted an interview of Lewis that resulted in Lewis admitting that he used the credit card to make unauthorized transactions "a few times." Stephens' report stated that when confronted with Archer Tubular's report of approximately $40,000.00 in unauthorized charges, Lewis denied making that many charges to the card, but offered to pay back the money in monthly installments in order to avoid prosecution. The State

5

moved into evidence a printout of Archer Tubular's fuel transactions since the date of Lewis' termination.

In addition to Stephens' report, the trial court considered Lewis' PSI report. Although the PSI report is not included in our appellate record, the reporter's record demonstrates that the report contained several entries, including two previous felony convictions. At sentencing, Lewis' counsel argued that Lewis would be willing to pay up to $40,000.00 if the trial court deemed that amount appropriate. The State argued that Lewis should be sentenced to twenty-two months' confinement in state jail and ordered to pay $40,000.00 in restitution.

## B.    The Sentence

After reviewing the evidence relevant to the issue of punishment, the trial court made the following remarks, which prompted this appeal:

> Now I need to make a determination of what is the appropriate sentence in this particular case.
>
> Based on your criminal history, you could have been enhanced to a second degree felony. The State chose not to do that. So that leaves the range of punishment between 180 days and two years in a state jail, instead of two to twenty years and probation from two to five years.[1]
>
> While your felonies are old, you do -- in the last few years, have had some issues with the criminal justice system. That is a factor I have to consider. You seem to have had a good work history.
>
> What this case really comes down to is what's the full story? We have heard that you have taken responsibility from the beginning, and you did admit to some of this to the police department. I had questions about the entire amount of restitution, what it should be and what it shouldn't be. Those are questions that

---

[1]Lewis complains of improper enhancements that increased the level of punishment of his state jail felony offense. As the trial court properly explained, Lewis' sentence was not enhanced. We find Lewis' complaint of improper enhancement meritless.

6

could have been answered, but I can't speculate on what you would or wouldn't have said or that you -- you didn't take the stand, so I'm not going to consider that, but it does leave questions for the Court that I have to use my reason and common sense to answer. I've looked at the -- I've looked at the schedule [of fuel charges] attached to the police report. And what I see is that I see numerous instances that on one date the credit card is used maybe two or three times within a 10-minute period at the same gas station. I'm going to have to assume it was either you or the other individual involved. This just didn't start happening in September of 2012. This started happening shortly after you were terminated from them.

Your version in the PSI seems to be evasive at best. It's not taking responsibility; it's, "Well, at the time they were having layoffs, the job wasn't going well and I abused my credit card a few times." It wasn't your credit card and you just didn't abuse it a few times; it wasn't two or three times. We have you on tape on three or -- doing it three times, but looking at this, using my reason and common sense, it looks like it was a lot. I can't justify a probated case in this instance. I'm going to sentence you to 15 months' confinement in a state jail.

## C.    Consideration of Lewis' Prior Bad Acts Was Proper

Lewis pled guilty to one count of credit card or debit card abuse. Evidence admitted during punishment without objection demonstrated that Lewis had used the fuel card without authorization more than one time. According to Stephens' police report, even Lewis admitted that he had used the card illegally "a few times." The trial court was presented with Archer Tubular's seven-page printout of unauthorized fuel transactions, and Lewis' counsel argued that Lewis would be willing to pay $40,000.00 in restitution if the trial court would be willing to assess community supervision. In light of the record, we conclude that the trial court's decision that Lewis abused the fuel card "a lot" was not improper. Further, we decline Lewis' invitation to reweigh the evidence introduced at punishment. Accordingly, we overrule Lewis' sole point of error on appeal.

7

## III. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     February 11, 2015
Date Decided:       March 24, 2015

Do Not Publish

8